440 So.2d 378 (1983)
MOBIL CHEMICAL COMPANY, A DIVISION OF MOBIL CORPORATION, Appellant,
v.
Carl R. HAWKINS, Appellee.
No. AQ-165.
District Court of Appeal of Florida, First District.
September 14, 1983.
Rehearing Denied November 3, 1983.
*379 Julian Clarkson of Holland & Knight, Tallahassee, Charles H. Kirbo and Michael C. Russ of King & Spalding, Atlanta, Ga., for appellant.
Alan C. Sundberg, George N. Meros, Jr., and J. Robert McClure, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, and Edwin B. Browning, Jr. of Davis, Browning & Hardee, Madison, for appellee.
David G. Owen, Columbia, S.C., for amicus curiae FMC Corp.
Stephen F. Baker, Winter Haven, for amicus curiae Florida Agr. Research Institute, Inc.
John D. Conner, Jr. and Raymond B. Biagini of McKenna, Conner & Cuneo, Washington, D.C., for amicus curiae Nat. Agr. Chemicals Ass'n.
Mygnon C. Evans, Lakeland, for amicus curiae Florida Citrus Mutual.
THOMPSON, Judge.
Mobil Chemical Company (Mobil) appeals a judgment awarding appellee compensatory and punitive damages pursuant to the jury's verdict finding that Mobil breached express and implied warranties, and knowingly made certain misrepresentations in connection with the sale of its nematicide-insecticide, Mocap. Mobil's principal contentions on appeal are that a new trial should have been granted because of juror misconduct and that a directed verdict should have been granted in Mobil's favor with respect to the punitive damage count. We agree with both of these contentions and reverse.
During voir dire of prospective jurors, the trial judge introduced the parties and their attorneys to the members of the venire, and the attorneys then read to the venire the names of their prospective witnesses. The names of the attorneys and several of the witnesses were thereafter repeated before the venire as specific questions were asked of individual prospective jurors. Among the names so repeated was that of A.E. Crawford, appellee's father-in-law. In another question, the prospective jurors were asked if any of them knew "the Crawford family." Another name repeated before the venire was that of Judge Bobby Kirby, an attorney who represented appellee in this case prior to being elected judge and who retains a fee interest in this case by virtue of that prior representation. As the voir dire progressed, and as individual prospective *380 jurors were excused and replaced in the jury box by other members of the venire, the court and the attorneys for both parties increasingly relied on the commendable (and, we believe, universally practiced) time saving technique of asking the new prospective jurors whether they had heard the questions asked previously, and whether their answers would differ from those given by the other prospective jurors. The last person on the venire to be called into the jury box answered "No" to the court's questions whether she knew "anything about this case or anyone involved" and whether her answers to the previously asked questions would be "unusual." When Mobil's counsel asked this prospective juror if she had heard the questions asked of the other jurors and whether her answers would be the same as theirs, she responded affirmatively. Based on these responses, the juror was accepted as qualified by both parties, and was seated on the jury. After conclusion of the trial, counsel for Mobil discovered that the juror was a member of the Crawford family, was the second cousin of appellee's wife, and had been a client of Judge Kirby's as recently as one year before the trial.
Florida Rule of Civil Procedure 1.431(c)(1) provides as follows:
On motion of any party the court shall examine any prospective juror on oath to determine whether he is related to any party or to the attorney of any party within the third degree or is related to any person alleged to have been wronged or injured by the commission of the wrong for the trial of which the juror is called or has any interest in the action or has formed or expressed any opinion or is sensible of any bias or prejudice concerning it or is an employee or has been an employee of any party within 30 days before the trial. A party objecting to the juror may introduce any other competent evidence to support the objection. If it appears that the juror does not stand indifferent to the action or any of the foregoing grounds of objection exists or that he is otherwise incompetent, another shall be called in his place. (emphasis supplied).
In Florida, the rule to be applied in determining degrees of kinship is the common law rule, under which second cousins are held to be related within the third degree. See E. Simon, Redfearn Wills and Administration in Florida, § 20.10 at 377, n. 23 (5th Ed. 1977); Trawick, Florida Practice & Procedure, § 23-6 (1982). See also Walsingham v. State, 61 Fla. 67, 56 So. 195 (1911), wherein a juror who was a second cousin of the decedent's wife was held related by affinity to the decedent within the third degree. Thus, the juror who failed to disclose her relationship to appellee's wife was subject to challenge for cause under the rule, and we have not the slightest doubt that she would have been so challenged had this relationship been revealed.
Appellee's argument that reversal is not required because Mobil has failed to prove that the juror was biased in his favor or that the juror even knew of her relationship to him must fail. In our view, the above quoted rule and its predecessor statute, § 53.021(1), Fla. Stat. (1971), were respectively promulgated and enacted on the basis of a commonly held (and probably accurate) presumption that persons related to a party within the third degree know of the relationship and are prejudiced thereby. Obviously, if prejudice is presumed no burden of proving prejudice exists. If a jury verdict in a case such as this is to be allowed to stand at all, logic would dictate that the burden be placed on appellee to prove an absence of bias, and not vice versa. Furthermore, we believe that the rule was intended to eliminate both actual impropriety and any appearance of impropriety. The public perception of our system of justice would hardly be enhanced by a rule which permitted a relative of a party to sit in judgment of that party's dispute with an outside party.
The case of State v. Rodgers, 347 So.2d 610 (Fla. 1977), wherein an underaged juror lied about her age in order to be seated on the jury, is clearly distinguishable. The fact that a person has not attained the age *381 of majority may give rise to an inference that he or she lacks the maturity necessary to the proper discharge of the solemn responsibilities of jurors. However, age, unlike kinship, will not ordinarily support an inference of bias for or against a particular party in a particular case.
We also reject, as being entirely without merit, appellee's argument that Mobil waived its right to challenge the juror post-trial by failing to specifically ask her on her voir dire about any relationship she might have with the Crawford family or appellee's wife. It is abundantly clear from the transcript of the voir dire proceedings that no person sufficiently perceptive and alert to be qualified to act as a juror could have sat through the voir dire without realizing that it was his or her duty to make known to the parties and the court any relationship with any of the named parties, witnesses, or attorneys. Nevertheless, the juror failed to reveal her relationship to appellee's wife and to his former attorney. Her failure to disclose material information bearing on her possible bias and her qualifications to serve as a juror deprived Mobil of its right to intelligently participate in selection of the jury, and gives rise to an unacceptably strong inference that Mobil did not receive the fair trial to which it was entitled. Accordingly, we reverse and remand for a new trial.
We further conclude that the trial judge erred in permitting the appellee's claim for punitive damages to go to the jury. It is the established law of this state, as recently reaffirmed by our Supreme Court, that punitive damages are not awardable for a breach of contract unless the conduct constituting the breach of contract is accompanied by wrongful conduct which amounts to a distinguishable and independent tort. Southern Bell Telephone & Telegraph Co. v. Hanft, 436 So.2d 40 (Fla. 1983); Lewis v. Guthartz, 428 So.2d 222 (Fla. 1983); Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957).
Here, the representations which created the warranty alleged to have been breached are precisely the same representations as those which the appellee chooses to characterize as tortious misrepresentations, and upon which appellee relies as the basis for his claim for punitive damages. Appellee did not plead and prove an independent tort against him. The case of Johnson v. Lasher Milling Co., Inc., 379 So.2d 1048 (Fla. 1st DCA 1980) is not to the contrary. There, the defendant deliberately defrauded the plaintiff by misrepresenting the weight of loads of corn sold to plaintiff, an act which in our view could constitute a criminal act under Ch. 812, Fla. Stat. In other words, the defendant intentionally took the plaintiff's money in exchange for goods which he represented had been delivered, but which in fact he did not deliver and did not intend to deliver. Here, the alleged misrepresentations made by Mobil were directed only to the quality and efficacy of Mocap. The appellee has not alleged that he received less Mocap than he believed he had purchased, and he neither pled nor proved that the chemical composition of the Mocap was other than as represented by Mobil. While it appears that appellee did not receive the benefit of his bargain in the sense that the Mocap did not perform well and did not meet his economic expectations, see Monsanto Agricultural Products Company v. Edenfield, 426 So.2d 574 (Fla. 1st DCA 1983) (tort law does not impose a duty upon a manufacturer to produce only such products as will meet the economic expectations of purchasers), there is no issue in this case as to whether the appellee received what he paid for, i.e., a stated quantity of Mocap. Although the proofs adduced at trial suggest that Mobil may have breached its warranty of the effectiveness of Mocap, no independent tort has been committed and punitive damages may not be awarded.
For the foregoing reasons we remand the case to the trial court with instructions that judgment be entered for Mobil with respect to the punitive damages count of the complaint, and for retrial of appellee's counts alleging breach of express and implied warranties. *382 Reversed and remanded for further proceedings consistent herewith.
BOOTH and WENTWORTH, JJ., concur.

ON REHEARING
THOMPSON, Judge.
Much of appellee's motion for rehearing or certification is impermissible reargument. See Rule 9.330(a), Fla.R.App.P. However, several of appellee's apparent misconceptions warrant discussion.
Appellee contends this court held that a misrepresentation of quality cannot be fraud, and that the same facts that were the basis for the breach of warranty cannot also constitute a tortious misrepresentation which would support an award of punitive damages. Although this was not the court's holding, the opinion should be clarified if it is susceptible of such an interpretation.
Appellee argues this court misunderstands Johnson v. Lasher Milling Co., Inc., 379 So.2d 1048 (Fla. 1st DCA), cert. denied, 388 So.2d 1114 (Fla. 1980). The Johnson case involved a seller who lied about the weight of his loads of corn, an intentional misrepresentation of a known and existing fact. This court affirmed the award of punitive damages on the fraud count of the complaint, finding that "the willful tort of fraudulent misrepresentation was properly pled and proved." 379 So.2d at 1051. According to appellee this court erroneously distinguished Johnson from the instant case on the ground that Johnson involved a misrepresentation of quantity whereas this case involves a misrepresentation of the quality and efficacy of Mocap. He contends that this is not a meaningful distinction under Florida law or the definition of fraudulent misrepresentation. Using the example of a merchant who sold a one carat diamond and represented it as a two carat diamond, the appellee argues that under the holding in this case the merchant would be guilty of fraudulent misrepresentation, whereas if the same merchant sold an F-quality diamond and misrepresented it as the highest quality diamond, A-quality, it would not be a fraudulent misrepresentation. That is simply not true. A misrepresentation of quality can be and is fraudulent misrepresentation where there is a misrepresentation of known and presently existing characteristics or attributes of the product. In fact, the selling of an F-quality diamond which was represented as an A-quality diamond is a very good example of an actionable fraudulent misrepresentation of quality because it is a misrepresentation of a presently known and existing fact.
Mobil's alleged misrepresentation concerned the future performance of a product which was to be applied under circumstances and conditions, in a manner, and by persons over which it had no control, and was not a misrepresentation of a presently existing and presently known quality or quantity. This court has previously held in Monsanto Agricultural Products Co. v. Edenfield, 426 So.2d 574, 577 (Fla. 1st DCA 1982), that tort law does not impose a duty upon manufacturers to produce only such products as will meet the economic expectations of purchasers, saying that "[a] manufacturer of agricultural chemicals, like a producer of seed, will generally have no knowledge of the field or weather conditions which will obtain when its product is put to use, and certainly has no control over the manner in which its product is applied." Likewise, a seed producer breaches his warranty, express or implied, but is not guilty of fraudulent misrepresentation merely because the seed he sells, when planted in the future, does not have the represented percentage rate of germination. Cf. Corneli Seed Co. v. Ferguson, 64 So.2d 162 (Fla. 1953); Pennington Grain and Seed, Inc. v. Tuten, 422 So.2d 948 (Fla. 1st DCA 1982). As the representation in this case involved the future performance of a product, the application and use of which was wholly beyond Mobil's control, such representation does not rise to an actionable tort of fraudulent misrepresentation and cannot be a basis for punitive damages.
The same facts that are the basis for a breach of warranty count can be but are *383 not always the basis of a fraudulent misrepresentation count. The misrepresentation of the quality of a diamond would support not only a breach of warranty count, but also a fraudulent misrepresentation count. However, in this case the representation as to the future performance of a product to be used under conditions and in a manner over which Mobil had no control was not a representation of a known and existing fact or condition and did not constitute a tort or fraudulent misrepresentation.
Appellee also contends this court overlooked its recent per curiam decision in Mobil Chemical Company v. Garrison, 392 So.2d 71 (Fla. 1st DCA 1980), which affirmed an award of both compensatory and punitive damages in connection with the sale of Mocap. Garrison was a per curiam affirmance without written opinion, which is no precedent even in this court. See Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310 (Fla. 1983). If we could consider per curiam affirmances as precedent and went to the trouble of obtaining the record and briefs and reviewing same we would find, as admitted by the appellee in his Motion for Rehearing, that the issue of the absence of a separate and independent tort was not raised on appeal in Garrison. This court does not consider on appeal points which are not raised, briefed, or argued on appeal. Therefore, the question could not have been considered by this court in its per curiam affirmance.
In our discussion of the appellee's misconception of our holding we have removed all of the alleged conflicts except the alleged conflict on the degree of kinship created by Jenkins v. State, 380 So.2d 1042 (Fla. 4th DCA 1980). As we stated in the opinion, the Supreme Court has held in Walsingham v. State, 61 Fla. 67, 56 So. 195 (Fla. 1911) that a juror who was a second cousin of the decedent's wife was related by affinity to the decedent in the third degree. This decision has never been modified or reversed by the Supreme Court. Walsingham was not cited by the Jenkins court, but the court in Jenkins was without authority to overrule it, either knowingly or unknowingly. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). Even if the relationship was not a sufficient basis for a challenge for cause pursuant to Rule 1.431(c)(1), Fla.R.Civ.P., the fact that the juror withheld information that she was a cousin of appellee's wife and withheld information that she had been represented within the past year by an attorney still holding a fee interest in the case casts such grave doubts on her ability to render a fair and impartial verdict to the defendant that a challenge for cause should be granted. See Irby v. State, 436 So.2d 1047 (Fla. 1st DCA 1983).
The motion for rehearing or certification is denied.
BOOTH and WENTWORTH, JJ., concur.