563 So.2d 197 (1990)
Mercedes SANCHEZ, Appellant,
v.
INTERNATIONAL PARK CONDOMINIUM ASSOCIATION, INC., et al., Appellees.
No. 89-50.
District Court of Appeal of Florida, Third District.
June 26, 1990.
Perez-Abreu, Zamora & de la Fe and Ernesto J. de la Fe and Enrigue Zamora, Coral Gables, for appellant.
West & Lindley and Harold West, North Miami Beach, Kubicki, Draper, Gallagher and McGrane, Betsy E. Gallagher, Miami, Buschbom & Panter, Miami, for appellees.
Before BASKIN, FERGUSON and COPE, JJ.
COPE, Judge.
Appellant Mercedes Sanchez was plaintiff below in an action for personal injuries as a result of her slipping and falling on a wet tile floor in a condominium building lobby. The jury returned a verdict in Sanchez' favor, but attributed to her ninety-six percent contributory negligence and two percent negligence for each of the defendants, appellee International Park Condominium Association, Inc., and appellee Miami Domestic Services, Inc.
Ms. Sanchez is of Cuban extraction, and testified at trial through an interpreter. *198 After the trial, one of the jurors volunteered the comment that another juror had made a derogatory comment about Cubans. The trial court conducted interviews of each of the six jurors. Each juror was interviewed separately by the court, on the record and in the presence of counsel. The court also allowed a limited amount of inquiry by counsel. For present purposes the jurors will be identified in the order in which they were interviewed.
Juror number one testified:
... I was surprised ... [that juror number six] was selected for the jury, and I mentioned that he seemed to be a very opinionated person, and he made some remark in the jury room that I had a problem with.
The Court: What was that remark?
[Juror Number One]: That remark was, Cubans as a whole, whenever anything like this happens, they yell sue, sue, sue, or want to sue at the drop of a hat, something like that.
.....
I personally had a problem with the statement that man made. I don't feel it affected me or anybody for that matter in the outcome... .
.....
The Court: It was never brought up again?
[Juror Number One]: No. Well, there was another reference, and I don't know what the conversation was. He said something about being ambulance chasers, but I can't even recall.
The Court: Did that statement in any way affect your decision?
[Juror Number One]: I didn't appreciate the statement, but it didn't affect my decision at all.
The testimony of jurors two and four was substantially identical. Jurors three and five testified that they did not recall any derogatory remarks. Juror number six, who was identified by jurors one, two and four as having made the remarks, denied having made them, and stated that he heard no such remarks. He indicated that someone, whom he could not identify, had made a remark about ambulance chasing, but that it was not associated with any particular ethnic group.[1]
The trial court did not make any specific factual findings. The court concentrated on trying to determine whether the jurors had been influenced by any comments reflecting ethnic bias. The jurors testified that they were not influenced. The trial court denied the motion for new trial.
For purposes of the appeal the parties have proceeded on the assumption that the derogatory remarks were in fact made by juror six. The high degree of similarity in the accounts given by jurors one, two and four supports that conclusion. The appellees argue, however, that the remarks are not such as would warrant a new trial. We disagree.
We find persuasive the decision in United States v. Heller, 785 F.2d 1524 (11th Cir.1986), a case in which a juror made antisemitic remarks to other jurors during a criminal trial. The court there said:
The judiciary, as an institution given a constitutional mandate to ensure equality and fairness in the affairs of our country when called on to act in litigated cases, must remain ever vigilant in its responsibility. The obvious difficulty with prejudice in a judicial context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require. A racially or religiously biased individual harbors certain negative stereotypes which, despite his protestations to the contrary, may well prevent him or her from making decisions based solely on the facts and law that our jury system requires.
Id. at 1527.[2]See also People v. Jones, 105 Ill.2d 342, 86 Ill.Dec. 453, 457-58, 475 N.E.2d 832, 836-37 (1985). The views set *199 forth in Heller draw support by analogy from the considerations underpinning State v. Neil, 457 So.2d 481 (Fla. 1984), City of Miami v. Cornett, 463 So.2d 399 (Fla. 3d DCA), cause dismissed, 469 So.2d 748 (Fla. 1985) (applying Neil to civil cases), and Moriyon v. State, 543 So.2d 379, 380 (Fla. 3d DCA), review dismissed, 549 So.2d 1014 (Fla. 1989).
Jury service is a collegial process. It may be that the other jurors were not affected by the remarks made by juror six. Juror six was, however, an active participant in the deliberative process, and the verdict included his input. The jury's verdict included not only a determination of liability, but also the amount of damages and percentages of comparative fault. The plaintiff was entitled to have her case heard by an impartial jury.[3] We therefore reverse the final judgment and remand for a new trial.
NOTES
[1] Counsel inquired on voir dire whether the jurors would be impartial given the fact that the plaintiff was Spanish speaking, and the jurors responded affirmatively.
[2] As this is a civil case, the sixth amendment portion of the court's analysis is not applicable here.
[3] Appellees rely in part on Evans v. Roth, 168 So.2d 546 (Fla. 3d DCA 1964), cert. denied, 174 So.2d 32 (Fla. 1965). Evans involved, in part, a racially prejudicial statement made by a member of the venire who was excused for cause. That statement was held not to constitute a basis for granting a new trial. Evans also referred to "remarks made in the jury room," id. at 546, but the remarks are not set forth in the opinion. We do not read Evans to hold that remarks made by a juror can never be a basis for granting a new trial, but only that on the basis of the record there presented, the trial court did not abuse its discretion in denying relief.