WOLF, Judge.
Kathryn Singletary (Singletary) and the other plaintiffs appeal following a verdict in favor of the defendant, Dr. Lewis, in a medical malpractice case. The appellant raises a number of issues on appeal, only one of which has merit and needs to be addressed herein: Whether the trial judge erred in refusing to order juror interviews pursuant to rule 1.431(h), Florida Rules of Civil Procedure. We believe that the trial court did, in fact, commit error in light of evidence that one juror failed to adequately answer questions during voir dire and evidence of certain improper remarks which were allegedly made by jurors. We reverse and remand to the trial court to conduct interviews of the jurors to determine whether and to what extent a juror knew Singletary or members of her family and whether any improper statements were made which would indicate that the case may have been decided based upon improper considerations.
While pregnant, Singletary (a black female) went to see Dr. Lewis (a white female). During delivery of Singletary’s baby, a number of complications arose, and the baby suffered serious injuries and permanent impairment which Singletary alleges were as a result of negligence on the part of Dr. Lewis. After a trial, the jury returned a verdict in favor of the defendant.
Sometime later, the alternate juror, Lumpkin, talked to Singletary about remarks which had been made by jurors during the trial. Singletary called her lawyer. The lawyer telephoned Lumpkin, and based upon what she told him, the lawyer filed a motion to interview jurors. The court convened a hearing to hear testimony from Lumpkin. At the hearing, Lumpkin testified that juror Tuten said more than once *636 during trial, “They ought to sewed her up. She was a fool for having so many babies.” Lumpkin also testified that one of the jurors said, “Who talked her into suing a doctor?” and when a banker appeared in the courtroom one day, one of the jurors wondered aloud why the banker was there and wondered how he knew “they” were going to win. Lumpkin also said that in the jury room prior to beginning deliberations, jurors talked about what had been going on in the courtroom. Lumpkin appeared very careful not to quote what different people said because she couldn’t remember their exact words. She merely said, “They discussed some of the things that went on in the courtroom.” She reported that Tuten told the jury members that she had asked to be excused, but the judge told her he needed her.
Finally, Lumpkin stated that she believed the five white jurors were biased against the plaintiffs because the plaintiffs were black, and that although these jurors did not make specifically racial remarks in front of her and Scippio (a black juror), nevertheless, she knew from “little comments” they made that they carried such bias. The court sustained an objection to double-hearsay testimony to the effect that Scippio had told Lumpkin that some of the jurors said that Singletary would get what she needed from welfare and the jurors preferred that rather than her getting it from Dr. Lewis.
In regard to the failure to disclose information during voir dire, Lumpkin also testified that during the course of the trial, Tuten indicated that she knew the Single-tary family by saying, “I know them.” Lumpkin said she did not know exactly what she meant by that. During voir dire, Tuten stated that she had run a grocery store for 50 years and, therefore, knew everyone in the county, but when the ve-nire was asked specifically whether anyone knew Singletary, Tuten did not respond. After hearing Lumpkin’s testimony, the trial court denied plaintiffs’ motion to interview the jurors and denied their motion for a new trial.
 Rule 1.431(h), Florida Rules of Civil Procedure, provides that a party who “believes that grounds for legal challenge to a verdict exists ... may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge.” A party requesting a jury interview does not have to conclusively establish that the alleged juror misconduct occurred and prejudiced their case, but only that a legal basis for the inquiry exists. Snook v. Firestone Tire and Rubber Co., 485 So.2d 496 (Fla. 1st DCA 1986). We believe appellant has met this burden. The concealment of a material fact relevant to issues in the case by a juror during voir dire, and the presence of prejudice which would prevent a juror from making a decision based solely on the facts, both constitute grounds for a legal challenge to a verdict. See Mobil Chemical Co. v. Hawkins, 440 So.2d 378 (Fla. 1st DCA 1983), rev. den., 449 So.2d 264 (Fla.1984) (concealment of material fact); Sanchez v. International Park Condominium Ass’n, Inc., 563 So.2d 197 (Fla. 3rd DCA 1990) (presence of prejudice.)
A juror’s relationship with or knowledge concerning one of the parties is considered to be a material fact. Mobil Chemical Co., supra, at 381; Industrial Fire and Casualty Ins. Co. v. Wilson, 537 So.2d 1100, 1103 (Fla. 3rd DCA 1984); Sidles v. Ryder Truck Lines, Inc., 267 So.2d 379 (Fla. 2nd DCA 1972), cert. denied, 275 So.2d 253 (1973). Where there are reasonable grounds to believe concealment of a material fact has taken place, a party is entitled to conduct a jury interview. In the instant case, evidence has been adduced that indicates juror Tuten may have some knowledge concerning Singletary’s family. While Singletary’s attorney did not specifically ask whether any of the panel knew the Singletary family, it is abundantly clear, as it was in Mobil Chemical Co., that “no person sufficiently perceptive and alert to be qualified to act as a juror could have sat through the voir dire without realizing that it was his or her duty to make known to the parties and the court any relationship with any of the named parties, witnesses, or attorneys [or the immediate fam *637 ilies of the party].” Mobil Chemical Co., supra, at 481. Since the extent of the knowledge and relationship with Single-tary’s family is unclear, it would be appropriate to conduct a juror interview so the trial judge may make factual determinations concerning the nature and extent of the alleged material concealment.
The rest of the testimony from the alternate juror, Lumpkin, related to comments made by jurors which indicated that improper considerations may have entered into the verdict. Evidence of improper considerations by the jury will justify a jury interview. International Union of Operating Engineers Local 675 v. Kinder, 573 So.2d 385 (Fla. 4th DCA 1991); Bickel v. State Farm Mut. Auto. Ins., 557 So.2d 674 (Fla. 2nd DCA 1990). Prejudice against one of the parties or the making of prejudicial comments in the presence of the jury is evidence of improper considerations. International Union, supra; Sanchez, supra. This court finds the decision in United States v. Heller, 785 F.2d 1524 (11th cir.1986), to be persuasive. In that case, Heller made anti-Semitic remarks to other jurors during a criminal trial. In Heller, the federal court said:
The judiciary, as an institution given a constitutional mandate to ensure equality and fairness in the affairs of our country when called on to act in litigated cases, must remain ever vigilant in its responsibility. The obvious difficulty with prejudice in a judicial context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require. A racially or religiously biased individual harbors certain negative stereotypes which, despite his protestations to the contrary, may well prevent him or her from making decisions based solely on the facts and law that our jury system requires.
Id. at 1527.[1]
The trial court in the instant case, based upon evidence received from Lumpkin, should have embarked on a jury interview (as was done in Sanchez) to determine the nature, extent and content of any improper remarks. While appellant urges this court to find that she is entitled to a new trial based upon the testimony from Lumpkin, such a finding would be premature based upon the testimony of one juror, the alternate. The trial judge should interview all the jurors and make the initial factual determination as to whether the evidence supports a finding of misconduct on the part of the jury. We decline to make these factual determinations based upon the record before us.
We reverse and remand for the trial court to conduct a jury inquiry pursuant to rule 1.431(h), Florida Rules of Civil Procedure.
ALLEN, J., concurs.
ERVIN, J., concurs and dissents with written opinion.

. The United States v. Heller decision and the quote contained therein was also found to be persuasive by the Third District Court of Appeal in Sanchez, 563 So.2d at 198.