QUINCE, Judge.
Joann and Albert Wright appeal an order denying a motion for new trial. We reverse. Joann Wright, an African-American, was involved in a motor vehicle accident with a vehicle owned and operated by appellee, CTL Distribution, Inc. (CTL). The facts at trial established that the CTL driver, Eduardo Santos, attempted to switch lanes from the middle lane to the curb lane of a three-lane one-way street, and unknowingly struck the Wright vehicle twice as it was positioned to his right in the curb lane, which then caused Joann Wright to lose control of her vehicle and collide with a building. An all-white jury returned a verdict finding Wright seventy percent negligent.
Following the trial, one of the jurors contacted the Wrights’ counsel and described jury misconduct during deliberations. This juror executed an affidavit stating that during deliberations, racial slurs and comments occurred, and that several members of the jury said they did not want to award anything to Joann Wright because she was a fat, *1234 black woman on welfare and would blow the money on liquor, cigarettes, Jai alai, bingo or the dog track. The affidavit alleged the jurors stated they would be paying one way or another, by awarding money in this case or through welfare. The affidavit also stated several jurors questioned the bailiff concerning the verdict form, but these questions were not communicated to the trial judge.
The trial court denied the Wrights’ motion for new trial or, in the alternative, motion to conduct a jury interview. The Wrights appealed, and in Wright v. CTL Distribution, Inc., 650 So.2d 641 (Fla. 2d DCA 1995)[“Wright I”], this court reversed the trial court’s denial of the motion to interview jurors and held that if any of the allegations were true, the Wrights would be entitled to a new trial. After the matter was remanded to the trial court, the jury interview was conducted.
During the interview the following testimony was elicited. The first juror interviewed was the juror who filed the initial affidavit. She reaffirmed that racially stereotypical comments were made during deliberations, that the verdict was based upon the fact that Joann Wright was black and poor, and the jurors were concerned with how she was going to blow the money. In reference to the verdict form and the conversation with the bailiff, this juror reaffirmed that the bailiff was asked two or three questions but failed to relay those questions to the trial judge.
Of the six other jurors interviewed (including the alternate), the testimony of three corroborated that racially stereotypical comments and discussions occurred before and during jury deliberations, while a fourth juror offered the observation that any comments were made more in jest than anything. A fifth juror could not remember any specifics due to the passage of time, and a sixth juror denied the allegations but admitted that her memory was not as good as it would have been had the jury interview been conducted after the trial. Regarding, whether any questions were asked of the bailiff, two jurors corroborated that questions were asked, while the bailiff stated that he did not have any specific recollection of this particular jury.
After considering this testimony, the trial court entered an order which denied the Wrights’ motion for new trial. The court found:
Clearly, there was discussion in the jury room as to Plaintiffs ... sex, race, and recreational activities.... These matters were not discussed in a prejudicial manner or with any malice based on race, sex, or any other category.
[[Image here]]
The court finds that the improper racially prejudiced allegations set out in the affidavit of [juror one] did not occur nor did the improper statements attributed to the bailiff occur. Therefore the Motion for New Trial must be DENIED.
The trial judge continued:
As an aside, this Court has grave concerns with the new developments in Jury intrusion. The Jury System is one of our most cherished rights and protections. It has served our Country well for over 200 years and this latest trend appears to the Court to reflect a lack of confidence in our system.
All jurors come to Jury service with certain biases and prejudices. There may also be some who are not careful to speak politically correct. Our system envisions these flawed individuals since no juror comes to jury service devoid of these leanings. The history of the jury system shows us that these flawed individuals can set aside these flaws and reach verdicts which are just and fair. Important in the attainment of that goal is the free and open exchange of ideas and discussion in the jury room, unbridled with concerns of not speaking politically correct and possibly offending someone who feels strongly about some aspect of life.
This Court fears the juror who harbors some bias and keeps it quiet, then acts on those biases and votes on a verdict for reasons other than those raised in the case. The longstanding test that to overturn a Jury verdict based on happenings in the jury room the acts must have played a part in the decision and inured to the *1235 verdict is adequate protection to insure a fair trial. If we continue on the path we are blazing, the jurors should be warned that they should keep all opinions to themselves and carefully sanitize their statements lest the verdict be overturned. This includes statements about sex, race, occupation, age, height, weight, recreational activities, residency, place of birth, hair style, hair color, eye color, clothing, religion, party affiliation, or number of children just to name a few.
The trial court’s decision in this case is subject to an abuse of discretion review. State v. Hamilton, 574 So.2d 124 (Fla.1991). After review of the transcript of the jury interview, we conclude that the trial court abused its discretion in finding that no inappropriate, racially stereotypical discussions occurred during jury deliberations, and in finding that the bailiff was not asked questions regarding the verdict form. The juror interviews, as a whole, reflect strong to moderate corroboration by three other jurors of various aspects of the allegations in the affidavit, while only one of the jurors offered a complete denial of the allegations. See Sanchez v. International Park Condominium Association, Inc., 563 So.2d 197 (Fla. 3d DCA 1990)(reversed and remanded for new trial where one juror’s report of ethnic slurs was corroborated by two other jurors; two jurors did not remember the comments; and one juror denied making or hearing them); see also United States v. Heller, 785 F.2d 1524 (11th Cir.1986); Wright I, 650 So.2d at 643.
We are concerned that the trial judge seems to have exalted society’s interest in the secrecy of the deliberative process over society’s interest in the fairness of the deliberative process. The trial judge expressed a concern about individuals who silently bring their prejudices into the jury room, while apparently condoning those who openly express such prejudices. In focusing on this concern, as opposed to the one presented by this ease — overt statements of bias and prejudice — the trial judge got it exactly wrong. As our supreme court said in Powell v. Allstate Insurance Co., 652 So.2d 354, 357-58 (Fla.1995):
[W]hen appeals to racial bias are made openly among the jurors, they constitute overt acts of misconduct. [In this case] we attempt to draw a bright line. This line may not keep improper bias from being a silent factor with a particular juror, but, hopefully, it will act as a check on such bias and prevent the bias from being expressed so as to overtly influence others.... The issue of racial, ethnic, and religious bias in the courts is not simply a matter of ‘political correctness’ to be brushed aside....
We agree. In conclusion, the right to serve on a jury and to thereby pass judgment upon one’s peers is among the highest rights bestowed upon the citizens of a democracy. While our judiciary can do little about those individuals who silently bring biases and prejudices into the sanctity of the deliberative process, the judiciary can, should, and indeed must take action to ensure that such individuals do not feel free to openly express such biases and prejudices, and to thereby infect the fairness of the very process which it is their sworn duty to uphold.
We cannot avoid, nor should we try to avoid, the fact that our evolution as a society is not yet complete. Only through constant vigilance by those in positions of authority, to bring forth, to encourage, and to uphold the highest aspects of our humanity, can we continue to progress toward that elusive goal of a society of citizens equal in all respects before the law, rich or poor, black, brown, red, yellow, or white. All citizens are entitled to a fair trial, one decided by legally relevant facts and law, and one untouched by the taint of overt bias or prejudice. On this very capstone of our judicial processes, we can all rest assured.
Reversed and remanded for a new trial.
ALTENBERND, A.C.J., and LAZZARA, J., concur.