329 So.2d 391 (1976)
Clark Summer VELSOR and Georgia Lee Velsor, Appellants,
v.
ALLSTATE INSURANCE COMPANY and Ronald Miller, Appellees.
No. 74-1263.
District Court of Appeal of Florida, Second District.
March 17, 1976.
Rehearing Denied April 19, 1976.
*392 William R. Hapner, Mulholland & Hapner, and David A. Maney, Gordon & Maney, Tampa, for appellants.
Edward M. Waller, Jr., Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellees.
McNULTY, Chief Judge.
This negligence action comes to us in an unusual posture. Appellant, Mrs. Velsor, sought damages from appellees for injuries sustained by her in an automobile accident. Mr. Velsor sought necessarily incurred medical expenses for his wife's injuries and for his loss of consortium. After trial, the jury first returned a verdict in the amount of $10,000 for the wife but awarded "zero" damages for the husband. The trial court told the jury that if they found the wife had been compensably injured, then the husband would be entitled to recover some medical expenses as the evidence may have demonstrated. The court thereupon fully re-instructed the jury on the question of damages legally recoverable by the wife and the husband and sent them back to reconsider the verdict. In less than fifteen minutes the jury returned with their verdicts; again in the amount of $100,000 for the wife but this time in the amount of $35,000 for the husband.
The trial judge had the jury removed from the courtroom and told counsel that he was of the view that the jury had ignored his instructions and that he was going to set aside the verdicts and grant a new trial. Plaintiffs' counsel objected and requested that the jury be polled.
The jury was returned and the judge asked the foreman how they arrived at the first verdict. The foreman replied that it had included "doctor bills and hospital bills and for her suffering and everything, but we didn't include anything for him." The second verdict of $35,000 for the husband, he said, was for the husband's "suffering." The court then inquired of juror number two who stated that with respect to the second verdict of $35,000 for the husband that "... for him it is for the doctor (sic) bill and the aggravation he had to go through while she was sitting in the hospital." No further inquiry was made of any of the other jurors by the court. Instead he discharged the jury and thereafter obviously believing that the jury had erroneously failed to reduce the verdict for the wife by the amount of the medical bills, he entered a written order granting a new trial concluding that:
"The jury's failure to follow the Court's instruction was patently obvious. Interrogation of the foreman and one other juror confirmed the confusion in the minds of the jurors. This confusion permeates the entire verdict. If the members of the jury couldn't understand who was entitled to recover medical expenses after being instructed thereon three times, then the Court seriously questions if they could understand the instructions on comparative negligence."
We think the court erred. He expressed no dissatisfaction with the size of the verdict nor did he suggest in any way that the verdict was against the manifest weight of the evidence.[1] Rather, he sought to inquire into the reasoning processes of the jury in arriving at their final verdicts. This is impermissible in that it seeks to impeach the verdict by the very *393 matters which inhere in it, viz., the subjective decision-making process of the jury.[2] If a verdict is pronounced in the presence of all jurors which presumptively has satisfied the enlightened conscience of each of them it is against public policy to inquire into the motives and influences by which their deliberations were governed.[3] The rule is founded on the sound policy of preventing litigants or the public from invading the privacy of the jury room.[4]
The situation here is inapposite to those instances in which there is improper contact with, or conduct by, a juror or in those cases of verdicts arrived at by prior commitment to quotients or lot. Such cases involve matters extrinsic to the verdict; and inquiry or impeachment is proper in such cases for the reason that neither the individual thought processes, calculations or judgments of the jurors are revealed thereby nor are matters inquired into which form a proper predicate for the verdict. The errors, if any, do not therefore inhere in the verdict.[5]
The proper procedure for the trial court to have followed here, we think, was merely to poll the jury as requested by plaintiffs. If each juror indicated his assent to the verdicts ultimately arrived at, and affirmed that they were his verdicts, the court ought not have gone any further. If he determined thereafter, of course, a new trial or remittitur was appropriate for sufficient reasons within the discipline of Cloud v. Fallis,[6] it would certainly be a different matter. But we are not faced with that situation now.
In view whereof, the order appealed from should be, and it is hereby, reversed; and the cause is remanded with directions that the trial court reinstate the verdicts and enter appropriate judgments thereon.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] Compare Cloud v. Fallis (Fla. 1959), 110 So.2d 669.
[2] See McAllister Hotel, Inc. v. Porte (Fla. 1960), 123 So.2d 339; Astor Electric Service v. Cabrera (Fla. 1952), 62 So.2d 759; Coker v. Hayes (Fla. 1878), 16 Fla. 368.
[3] See Marks v. State Road Department (Fla. 1954), 69 So.2d 771.
[4] Id. See also 32 Fla.Jur., Trial § 273 (1960).
[5] See n. 3, supra. See also 32 Fla.Jur., Trial § 274 (1960).
[6] (Fla. 1959), 110 So.2d 669.