559 So.2d 1157 (1989)
James MALER, Jr., a Minor Child by and through His Mother and Natural Guardian, Joni MALER, Individually, and James Maler, Sr., Individually, Petitioners,
v.
BAPTIST HOSPITAL OF MIAMI, INC., Respondent.
No. 89-756.
District Court of Appeal of Florida, Third District.
December 26, 1989.
Rehearing Denied May 17, 1990.
*1158 Adams, Hunter, Angones, Adams, Adams & McClure and Christopher Lynch; William O. Solms, Jr., for petitioners.
Parenti & Falk; Cooper, Wolfe & Bolotin and Marc Cooper, for respondent.
Before HUBBART, FERGUSON and COPE, JJ.
HUBBART, Judge.
This is a petition for a writ of certiorari which seeks review of a trial court order granting a post-trial interview of jurors to be conducted in open court by the trial judge, after the jury had returned a verdict for the plaintiffs in a medical malpractice action. We have jurisdiction to entertain this petition and quash the order under review. Art. V, § 4(b)(3), Fla. Const.

I
The plaintiff-petitioners Joni and James Maler, Sr. brought a medical malpractice action below on behalf of their minor child, James Maler, Jr., against the respondent Baptist Hospital of Miami, Inc. and Dr. David Gair. The alleged basis for the malpractice claim was that the respondent and Dr. Gair had improperly treated a bacterial condition, which the minor child contracted at birth, resulting in severe brain damage to the child. The case was tried by a jury in the circuit court for seven days in February 1989; during the course of the trial, the plaintiff-petitioners settled with Dr. Gair and the case continued solely as to Baptist Hospital.
On March 1, 1989, the jury returned a special interrogatory verdict as follows:
"WE, the Jury, return the following verdict:
1. Was there negligence on the part of the Defendant, BAPTIST HOSPITAL OF MIAMI, INC., which was a legal cause of damage to the Plaintiff, JAMES MALER, JR.?
YES X NO ____
... .
2. Was there negligence on the part of JAMES MALER, SR., or JONI MALER which was a legal cause of damages to the Plaintiff, JAMES MALER, JR.?
YES X NO ____
... .
3. What is the total amount of negligence that you attribute to each of the parties.

BAPTIST HOSPITAL OF MIAMI, INC. 60 %
 ________
JAMES MALER, SR. 20 %
 ________
JONI MALER 20 %
 ________
 Total must equal 100%

4. What is the total amount of damages sustained by the Plaintiffs and caused by the incident in question?

JAMES MALER, JR. 1,300,000
 __________
JAMES MALER, SR., individually 100,000
 __________
JONI MALER, individually 100,000"
 ___________

Subsequently, each of the six jurors were polled at the request of the respondent Baptist Hospital and each juror affirmatively stated in open court that the above-stated verdict was his or her individual verdict. The trial judge then excused the jurors stating "[y]ou are free to discuss this case with anyone who will listen."
Two days later, counsel for the respondent Baptist Hospital, Michael J. Parenti, *1159 filed a pleading advising the court of a chance conversation he had with two of the jurors who had tried the case; the conversation was initiated by the jurors and took place as counsel was leaving the courthouse after the jury verdict had been returned. Shortly thereafter, Mr. Parenti, on behalf of Baptist Hospital, filed a motion to interview all of the jurors in the case and, in support thereof attached (a) his own affidavit and (b) the affidavit of David Mishael, who was counsel for the co-defendant Dr. Gair and a witness to the conversation with the two jurors. These affidavits set forth the details concerning the conversation and form the basis for the request for a jury interview. According to the affidavits, the jurors, in essence, stated that the jury had reached its verdict based on sympathy for the plaintiff-petitioner minor child and the fact that Baptist Hospital had insurance.
Predicated on these affidavits, the trial court entered an order granting Baptist Hospital's motion to interview the jurors, and directed that the court itself would conduct the interview in open court. Subsequently, after this court temporarily relinquished jurisdiction, the trial court entered a further order directing that the following questions would be propounded to the jurors in open court:
"1. Did the jury agree before the actual signing of the verdict form to find for the child, James Maler, Jr., for reasons outside of the evidence, such as sympathy, insurance, etc.?
2. Did the jury agree to find for the child, James Maler, Jr., although the greater weight of the evidence supported a verdict for the Defendant, Baptist Hospital of Miami, Inc.[?]"
In the event the answer to either of these questions is "yes," the trial court ordered that appropriate follow-up questions would be asked in the discretion of the court. The plaintiff-petitioners have filed the instant petition for certiorari challenging these orders directing the jury interview.

II
Although the issue is not free from doubt, we conclude that the two questions which the trial court proposes to ask the jury probe into matters which essentially inhere within the jury verdict and are therefore impermissible under well-settled principles of Florida law. Moreover, we do not think that any other inquiries of the jury could be properly framed based on the affidavits filed by counsel below because these affidavits raise, as well, matters which essentially inhere within the jury verdict and are beyond the scope of a proper post-trial jury inquiry.

A
Without question, both of the trial court's proposed questions inquire into the reasoning process and motivations of the jury in reaching their verdict, namely, (1) whether the jury agreed to decide the case for reasons outside the evidence, such as sympathy and insurance, and (2) whether the jury agreed to find for the injured child even though, in their opinion, the greater weight of the evidence supported a verdict for Baptist Hospital. It is, however, well settled in Florida that the jury's reasoning process or motivation in arriving at a verdict, even if erroneous or improper, is a matter which traditionally inheres within the jury verdict; it can form no basis for upsetting the verdict after the jury has returned and assented to it in open court, and may not be inquired into in a post-trial jury interview.[1]
The Second District in Velsor v. Allstate Insurance Co., 329 So.2d 391 (Fla. 2d *1160 DCA), cert. dismissed, 336 So.2d 1179 (Fla. 1976) states the controlling law:
"[The trial court] sought to inquire into the reasoning processes of the jury in arriving at their final verdicts. This is impermissible in that it seeks to impeach the verdict by the very matters which inhere within it, viz, the subjective decision making process of the jury. If a verdict is pronounced in the presence of all jurors which presumptively has satisfied the enlightened conscience of each of them, it is against public policy to inquire into the motives and influences by which their deliberations were governed. The rule is founded on the sound policy of preventing litigants or the public from invading the privacy of the jury room."
Id. at 392-93 (footnotes omitted) (quoted with approval in Schofield v. Carnival Cruise Lines, 461 So.2d 152, 155 (Fla. 3d DCA 1984), rev. denied, 472 So.2d 1182 (Fla. 1985)). The Second District, speaking through Judge (now Mr. Justice) Ben Overton, in Branch v. State, 212 So.2d 29 (Fla. 2d DCA 1968), further states the applicable law:
"[I]t is improper and against public policy to permit jurors to testify to motives and influences by which their deliberations were governed. (citations omitted). To allow such an inquiry concerning the motives and influences of jurors would extend litigation to attempt to determine the imponderable issue of what, in fact, motivated and influenced each juror in arriving at his own independent judgment in reaching a verdict."
Id. at 32.
It is therefore settled in Florida that after a jury has returned and assented to a verdict in open court, as here, it is impermissible to receive juror affidavits or other testimony for the purpose of setting aside the verdict on the ground that:
"`[1] the juror did not assent to the verdict; [2] that he misunderstood the instructions of the court, the statements of the witnesses or the pleadings in the case; [3] that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.'"
Russ v. State, 95 So.2d 594, 600 (Fla. 1957); see Florida Dept. of Transp. v. Weggies Banana Boat, 545 So.2d 474, 475-76 (Fla. 2d DCA 1989). In accord therewith, Florida courts have further held that the following matters inhere within the jury verdict and can form no basis for vacating a jury verdict or conducting a post-trial jury interview: (a) an improper consideration of some jurors that the defendant had the burden to prove his innocence in a criminal case, Mitchell v. State, 527 So.2d 179, 181-82 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988); (b) an erroneous belief by one juror that a majority of the jury governed on the issue of guilt or innocence in a criminal case, State v. Ramirez, 73 So.2d 218 (Fla. 1954); (c) an erroneous belief by the jury that the lesser offense of which they convicted the defendant was the highest offense charged, Smith v. State, 330 So.2d 59 (Fla. 1st DCA 1976) (vacation of verdict reversed); (d) a failure of the jury to follow an instruction by the court that they should disregard a co-defendant's confession insofar as it implicated the defendant, Branch v. State, *1161 212 So.2d 29 (Fla. 2d DCA 1968); (e) a disagreement among members of the jury as to whether they intended to find the defendant guilty in accord with their announced verdict, State ex rel. D'Andrea v. Smith, 183 So.2d 34 (Fla. 2d DCA 1966); (f) the improper logic of one juror in voting the defendant guilty so she would not have to be locked up for the night, Parker v. State, 336 So.2d 426 (Fla. 1st DCA), cert. dismissed, 341 So.2d 292 (Fla. 1976); (g) a claim by one juror that he was pressured into a verdict after being told by the bailiff that the judge was going on vacation, Schmitz v. S.A.B.T.C. Townhouse Ass'n, 537 So.2d 130 (Fla. 5th DCA 1988); and (h) a mistaken reduction by the jury, instead of the court, of the plaintiffs' total damages by the amount of the plaintiffs' comparative negligence. State Dept of Transp. v. Rejrat, 540 So.2d 911 (Fla. 2d DCA 1989); Dover Corp. v. Dean, 473 So.2d 710, 712 (Fla. 4th DCA), rev. denied, 475 So.2d 693 (Fla. 1985).
In each of the above instances, it was asserted that one or more members of the jury allegedly reached their verdict, as here, based on improper considerations, unfounded logic, erroneous beliefs, or confused intent; yet none of these matters were considered a proper basis for upsetting a jury verdict after the jury, as here, had returned and assented to their verdict in open court. Moreover, we think there is a sound underlying policy consideration which wisely forbids post-trial inquiry into these ephemeral matters. As expressed by Wigmore, it is
"the same which forbids a consideration of the negotiations of parties to a contract leading up to the final terms as deliberately embodied in their deed, namely, the loss of all certainty in the verdict, the impracticability of seeking for definiteness in the preliminary views, the risk of misrepresentation after disclosure of the verdict, and the impossibility of expecting any end to trials if the grounds for the verdict were allowed to effect its overthrow."

8 Wigmore, Evidence § 2349 (McNaughton rev. 1961) (emphasis added).
We recognize that Preast v. Amica Mutual Insurance Co., 483 So.2d 83 (Fla. 2d DCA), rev. denied, 492 So.2d 1334 (Fla. 1986), approved a post-trial jury interview by the trial court  which, in part, probed into the jury's reasoning process and revealed, in effect, that the jury awarded the plaintiff damages in a personal injury action based on sympathy for the plaintiff despite their conclusion that the plaintiff had suffered no permanent injury  and reversed a trial court refusal to grant a new trial on the issue of liability based on this revelation during the jury interview. Indeed, it was this decision which the trial court relied on in ordering the jury interview in the instant case. With all due respect, however, we must decline to follow this aspect of the Preast decision because, in our view, it is contrary to well-established law in Florida as stated above.

B
The respondent contends that the proposed jury interview is justified in this case based on the well-established rule in Florida that "`affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict... .'" Marks v. State Road Dept., 69 So.2d 771, 775 (Fla. 1954). It is urged, in effect, that an agreement by the jury to award damages to the plaintiff-petitioners based solely on sympathy, without regard to the evidence or law, as here, constitutes juror misconduct, and is, therefore, a matter extrinsic to the verdict sufficient to justify a jury interview and to set aside the jury verdict. The Preast court was obviously persuaded by this argument; we do not agree.
In our view, not every alleged jury impropriety can constitute a matter extrinsic to the verdict sufficient to prompt a post-trial jury inquiry  else any showing of improper considerations, mistaken legal or factual understandings, or erroneous reasoning by a jury would be sufficient to prompt such an inquiry, which is decidedly not the case. Russ; Mitchell; Ramirez; Smith; State ex rel.s' Andrea; Parker; *1162 Schmitz; Rejrat; Dean. In order to constitute juror misconduct and, therefore, a matter extrinsic to the verdict sufficient to set aside the verdict or for a post-trial jury inquiry, Florida and other courts have consistently held that some objective act must have been committed by or in the presence of the jury or a juror which compromised the integrity of the fact-finding process, as where
"[1] a juror was approached by a party, his agent or attorneys; [2] that witnesses or others conversed as to the facts and merits of the cause out of court and in the presence of jurors; [3] that the verdict was determined by aggregation and average or by lot, game or chance or other artifice or improper manner,"
Russ, 95 So.2d at 600; Marks, 69 So.2d at 775 (Fla. 1954); see Fitzell v. Rama Indus., 416 So.2d 1246, 1247 (Fla. 4th DCA 1982), or where: (a) a juror claims personal knowledge of the case tried and conveys this knowledge to the jury, Russ; (b) a juror lies about a material matter during jury selection, Sconyers v. State, 513 So.2d 1113 (Fla. 2d DCA 1987); (c) a juror makes vile racial, religious, or ethnic slurs against a party or witness during trial or jury deliberations, United States v. Heller, 785 F.2d 1524, 1527-28 (11th Cir.1986) (mistrial required); compare Evans v. Roth, 168 So.2d 546 (Fla. 3d DCA 1964); or (d) a juror, inter alia, goes to scene of the property involved in the case and reports his observations to the other jurors. United States v. Posner, 644 F. Supp. 885 (S.D.Fla. 1986) (new trial granted).
In each of these cases, the integrity of the fact-finding process was compromised by some objective occurrence so as to "taint" the jury's deliberations, viz: third party contact or conversations about the case with or in the presence of a juror, Russ; Marks; total abandonment of any deliberative process as when the jury decides the case by quotient, lot or chance, Marks; a disqualifying act of a juror which brings the latter's fairness into serious question, as when the juror lies about a material matter during jury selection, Sconyers, or expresses vile racial, religious or ethnic slurs about a party or witness, Heller; or jury exposure to alleged facts about the case which were never introduced in evidence, as when a juror gives personal testimony in the jury room about the case, Russ, or visits a relevant scene in the case and reports his findings to the jury, Posner. Moreover, these cases all center around some type of objective act or occurrence that was relatively easy to ascertain  as opposed to probing, as here, into the gossamer mental processes, agreements, conclusions, and reasoning of the jury.
Unlike the above cases, however, there has been no showing in the instant case of any juror misconduct which compromised the integrity of the fact-finding process. No outside influences were brought to bear on the jury; the jurors were fair and unbiased; the case was decided through a deliberative process; and no facts were brought before the jury which were not introduced in evidence. In short, there was no juror misconduct sufficient to set aside the verdict or prompt a post-trial jury interview.
We agree, of course, that a jury verdict for the plaintiff-petitioners which is unsupported by the evidence and is based solely on sympathy or emotion cannot stand. If such be the case, however, the trial court should enter a directed verdict for the respondent Baptist Hospital or, at the very least, grant a new trial, rather than conduct a post-trial interview of the jury. See Smith v. Brown, 525 So.2d 868, 869 (Fla. 1988); Horowitz v. Schwartz, 74 So.2d 801, 804 (Fla. 1954); Williams v. Meyer, 474 So.2d 1214, 1215 (Fla. 5th DCA 1985); Lazenby v. Beisel, 425 So.2d 84, 87 (Fla. 2d DCA 1982), approved, 444 So.2d 953 (Fla. 1984).

C
Finally, we have carefully examined the affidavits filed by counsel below and conclude that no other inquiries of the jury could be properly framed because the affidavits are solely concerned with matters which essentially inhere within the jury verdict. In essence, these affidavits aver that two jurors approached counsel immediately *1163 after the jury had rendered its verdict and stated various improper reasons why the jury had decided for the plaintiffs, including sympathy for the brain-damaged minor plaintiff and the fact that the respondent Baptist Hospital had insurance. For reasons previously stated, these are matters which essentially inhere within the verdict and may not be inquired into.
Beyond that, one of the jurors repudiated, in effect, the special jury verdict finding to which he had verbally assented moments earlier in open court, namely, that Baptist Hospital was guilty of negligence which was the legal cause of damage to the minor plaintiff James Maler, Jr.; he allegedly told counsel that "he did not think anyone at Baptist Hospital had done anything wrong," and that "he did not think the plaintiffs had proved their case." (Mishael affidavit, at 1-2). It is well settled, however, that a juror is not permitted to recant his verdict after it has been rendered and assented to in open court. See, e.g., State v. Ramirez, 73 So.2d 218, 219 (Fla. 1954); Coker v. Hayes, 16 Fla. 368, 396 (1878); State v. Thomas, 405 So.2d 220, 221 (Fla. 3d DCA 1981), rev. denied, 415 So.2d 1361 (Fla. 1982) and cases collected.
Further, the other juror expressed a strongly unfavorable opinion of the plaintiffs' expert medical witness and a strongly favorable opinion of the respondent's medical expert witness. Obviously, these are highly subjective opinions which inhere within the jury verdict and may not be inquired into in a post-trial jury interview. There is also an assertion by the first juror that he tried to keep the verdict down and that other members of the jury wanted to award "outrageous" damages which he opposed. This too is obviously a matter which inheres within the verdict.
For the above-stated reasons, the petition for a writ of certiorari is granted and the order under review requiring a post-trial jury interview is hereby
Quashed.
NOTES
[1] State v. Ramirez, 73 So.2d 218, 219 (Fla. 1954) ("[A]fter the return of a verdict in open court the testimony of jurors as to motives and influences by which their deliberations were governed should not be received."); Astor Elec. Serv. v. Cabrera, 62 So.2d 759, 762 (Fla. 1952) ("[A]ffidavits of jurors... are never admitted to show what was in another juror's mind when he approved the verdict or to reveal the circumstances which prompted their conclusion."); Coker v. Hayes, 16 Fla. 368, 396 (1878) ("[A]fter the return and affirmance of a verdict in open court, the testimony of jurors to the motives or influences by which their deliberations were governed [have not] been admitted."); State Dept. of Transp. v. Fortune Fed. Sav. & Loan Ass'n, 496 So.2d 960, 961 (Fla. 2d DCA 1986) ("[A]n investigation of the subjective decision-making process of the jury is not permissible."); Snook v. Firestone Tire & Rubber Co., 485 So.2d 496, 498 (Fla. 5th DCA 1986) ("[A]n investigation into the subjective decision-making process of the jury is not permissible."); Cummings v. Sine, 404 So.2d 147, 148 (Fla. 2d DCA 1981) ("[C]ourts ... do not permit an inquiry into the individual thought processes, calculations or judgments of jurors. This is true even where there is some evidence on the face of the verdict that the jury failed to follow the court's instructions."); Kirkland v. Robbins, 385 So.2d 694, 695 (Fla. 5th DCA 1980) ("[I]nvestigation of the subjective decision-making process of the jury is not permissible."), rev. denied, 397 So.2d 779 (Fla. 1981); National Indem. Co. v. Andrews, 354 So.2d 454, 456 (Fla. 2d DCA) ("The Supreme Court of the United States in considering the advisability of permitting a party to inquire into a jury's basis for reaching a verdict suggested that to permit the inquiry `would open the door to the most pernicious arts and tampering with jurors. The practice would be replete with dangerous consequences. It would lead to the grossest fraud and abuse,' and `no verdict would be safe.'"), cert. denied, 359 So.2d 1210 (Fla. 1978) (quoting McDonald v. Pless, 238 U.S. 264, 268, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915)).