ON MOTION FOR REHEARING EN BANC

PER CURIAM.
We grant appellee’s motion to rehear the cause en banc, withdraw our previous opinion and substitute this opinion.
Sometime after a verdict was rendered in favor of Derrick A. Powell and Eugena Powell (who are black) a juror came forward to complain that one of the other jurors (all of the jurors were white) had told a racial joke and yet another juror had made a racial statement. The trial judge, along with counsel for the plaintiff and the defense, interviewed that juror to see if it would be appro *788 priate to interview the remaining jurors. After this initial interview, the trial court refused to permit further juror interviews because it found that the applicable law prohibits post-trial inquiry into the juror’s motives and influences. The Powells appeal. We affirm.
We find that the trial court’s refusal to grant additional juror interviews does not indicate that it condoned racial insensitivity, but rather reflects its commitment to follow the law announced both by our supreme court and this court. We wish to make it clear that we, just as much as the dissent, deplore the crass and intolerant comments attributed to some members of the jury, but our inquiry is not (and should not be) whether some insensitive clods were permitted to serve on the jury by trial counsel, but rather whether some juror or the jury committed some objective act which compromised the integrity of the fact-finding process as where:
[1] a juror was approached by a party, his agent or attorney; [2] that witnesses or others conversed as to the facts and merits of the cause out of court and in the presence of jurors; [3] that the verdict was determined by aggregation and average or by lot, game or chance or other artifice or improper manner.[1]
Historically- and traditionally it has been the trial lawyer’s role and responsibility during voir dire to delve into the potential juror’s background and experiences in order to determine if the juror is likely to harbor any prejudice, bias or sympathy that might adversely affect the client’s interest. This, indeed, is where (and when) such inquiries should be made: “Do you tell or have you told racial or ethnic jokes?” If the juror answers “yes,” then the lawyer must decide whether to excuse him or her because of a fear of prejudice or, because of other considerations such as memberships in favorable organizations or contributions to favorable causes, to believe that, on balance, the juror would be beneficial to the client’s cause. If the juror answers “no,” and lies, then a new trial would be justified because of the juror’s perjury. There is no indication in this record that such inquiry ever took place. Racial, gender, ethnic, or religious insensitive statements are less likely to be made if the jury is itself composed of both genders and is multiracial, multi-ethnic and multi-religious. Cases such as State v. Neil, 457 So.2d 481 (Fla.1984), and City of Miami v. Cornett, 463 So.2d 399 (Fla. 3d DCA), cause dismissed, 469 So.2d 748 (Fla.1985), give trial lawyers additional tools to select a fair and impartial jury.
There is nothing in this record that suggests that the verdict in this case resulted from racial prejudice. The amount of damages in this case was hotly contested and, although it found no permanent injury, the jury nevertheless returned a verdict of $29,-320 which included sums for medical and wage loss as well as future medical and wage loss. But for the rearing of the ugly spectre of racial intolerance, probably no one on this court would suggest that the amount of damages awarded by the jury cannot be supported by the record. Should we set aside a verdict that appears appropriate on its face (where there is no correlation shown between the result of jury deliberation and the insensitive conduct of some of the jurors) based on an assumption that one cannot at the same time be both insensitive in speech yet fair in judgment?
While the complaining juror opines that the verdict would have been different had the plaintiff been white, her own actions and testimony place her conclusion in doubt. In explaining why she did not earlier report her concern to the court (while the trial judge could still take appropriate action), she testified:
Well, number one, some people will participate in jokes of that nature, just to kind of be a part of the gang, whatever. That one person will say something, and somebody will kind of laugh and that’s it. Kind of an, I don’t know, just trying to kind of get along or whatever. That maybe they are not that truly, really racially biased.
*789 But it — you know, they’re just trying to kind of polite laughter or whatever. Not to cause the problem.
And when I — the only way that I could see, I mean, I thought I was going to have better instructions before any of this went on, I couldn’t talk to the Bailiff.
And for me to stand there in court and say, I think these people are bigots, kind of a big accusation to make without really knowing if that is the case or if it was just — I mean, there was a comment made about the jokes, and well, if you can’t laugh or something, you know, it’s boring and we’re sitting here listening to a lot of information. If we can’t come in here and relax a little bit, you know, what’s the problem. Or what’s the point or something, you know, its no big deal.
And I wasn’t sure if it really was, if it was really racially biased or if it was just somebody, you know, like some people will say racial or Pollock [sic] jokes or whatever and people laugh at it. And they really don’t mean anything by it.
Even after full deliberation and the rendition of a verdict had occurred, the complaining juror could not say that the verdict resulted from prejudice. Clearly, the complaining juror, along with all of the other jurors, voted for the verdict at issue in this appeal and, upon being polled, reaffirmed in public their approval of the verdict. There is no charge that any of the jurors were threatened or in any way unduly influenced to vote for this verdict. There is no indication that any vote was the result of racial prejudice— regardless of evidence of racial insensitivity on the part of some. Even the complaining witness does not state that her vote was influenced by the racial insensitivity of some of the other jurors.
We acknowledge conflict with Sanchez v. International Park Condominium Association, Inc., 563 So.2d 197 (Fla. 3d DCA 1990). We think Sanchez ignored the supreme court’s opinion in Maler. Perhaps if our supreme court grants review of this matter, it will address the following troubling questions. Is it worse to rule against someone because of prejudice or to rule in favor of someone because of prejudice? For example, in Maler, the supreme court held that prejudice (sympathy) for the child inhered in the jury verdict. If a W.C. Fields-type juror[2] had been seated, would the prejudice against the child also inhere in the verdict? This court held in Rabun and Partners, Inc. v. Ashoka Enterprises, Inc., 604 So.2d 1284, 1286 (Fla. 5th DCA 1992), that prejudice against Patel, a rich doctor [because he did not need the money] “clearly fits within the category of prohibited inquiry into the emotions and mental processes of the jurors, matters which essentially inhere within the jury verdict.”[3] If the jury had ruled against Patel because he was Indian, would their verdict have been, from the standpoint of a fair and impartial trial, more repugnant?
If we are to look behind jury verdicts to root out racial prejudice, should we not take similar measures to root out prejudice based on gender, ethnicity, religion (or lack thereof), sexual orientation, wealth, pity or any other classification or consideration that might influence a result not based solely on the facts and law of any given case?
We reject Judge Diamantis’s position that prejudice based on racial consideration must be treated differently because the jurors are, in effect, agents of the state requiring a “strict scrutiny” standard. This concept is contrary to the time honored practice of having jurors of our peers — not state agents.
The current law of Florida seems to be the following:[4]
It is improper and against public policy to permit jurors to testify to motives and influences by which their deliberations were governed, [citation omitted]. To allow such an inquiry concerning the motive and influence of jurors would extend litiga *790 tion to attempt to determine the imponderable issue of what, in fact, motivated and influenced each juror in arriving at his own independent judgment in reaching a verdict.
If this policy is to change, it should be changed by the supreme court.
AFFIRMED.
HARRIS, C.J., and COBB, PETERSON, GRIFFIN and THOMPSON, JJ., concur.
W. SHARP, J., dissents, with opinion.
GOSHORN, J., dissents, with opinion.
DIAMANTIS, J., dissents, with opinion in which DAUKSCH, J., concurs.

. Maler v. Baptist Hosp. of Miami, Inc., 559 So.2d 1157 (Fla. 3d DCA 1989), approved, 579 So.2d 97 (Fla.1991).

. Anyone who hates children and dogs can't be all bad. Leo C. Rosten, (1908-) in tribute to Fields at a banquet (1939).

. For some reason counsel for neither party brought this case to our attention.

.Maler v. Baptist Hosp. of Miami, Inc., 559 So.2d 1157, 1160 (Fla. 3d DCA 1989).