FARMER, Judge.
In this negligence action, the jury returned a verdict finding in favor of the defendant. Plaintiffs counsel asked that the jury be polled. To the question, “[i]s this your verdict,” one juror responded “no.” At that point, the trial judge explained that the verdict is supposed to be unanimous. To this, the juror explained:
“It’s ours as a group.... But that doesn’t — How can I explain this? When we discussed everything, that’s what we came up with, but there is just some additional feelings involved. Maybe I answered the question incorrectly. It is our verdict.”
The court then inquired whether he had reached the verdict with the other jurors, and the juror responded, “Yes, I did.”
Later that same day, the juror telephoned plaintiffs counsel and complained that his fellow jurors had castigated him for his responses during the polling. While that was happening, one of the jurors also stated that she would not vote to award money to a lawyer. Ten days after the telephone conversation, plaintiffs counsel filed a motion for leave to interview the jurors, accompanied by an affidavit signed by the lawyer.
Omitting only names and its formal parts, the affidavit of counsel in support of the motion for a juror interview says in its entirety as follows:
“1. That I am the attorney for Plaintiffs ... in this action.
“2. On June 2, 1995 at approximately 3:30 P. M., I received a telephone call from juror No. 5 ..., informing me that the verdict in this action was rendered prior to considering the evidence based upon the feeling that a lawyer making a lot of money should not be given any money; that during the jury’s deliberation process, he was intimidated by juror No. 2 ... and juror No. 6 ...; that foul language was used against him in an effort to try to get him to vote their way; that after polling the jury the entire panel yelled and screamed at him; and, that it was clear in his mind that the verdict was not based upon the law and the evidence but based upon prejudice against the Plaintiff....
“Further affiant sayeth not.”
The motion, prepared by the same attorney at the same time as the affidavit, described the same conversation with the juror as follows:
“3. On [June 2, 1995], after the jury was polled, the jury returned to the deliberation room. In such room, juror No. 5 ... was yelled at by his fellow jurors for his disclosures during polling of the jury. In fact, the bailiff had commented in his 25 years he had not heard yelling like that in a jury room.
“4. On [June 2, 1995], after the court proceeding had terminated, juror No. 5 ... telephoned the undersigned attorney. During such conversation, jury [sic] No. 5 ... informed this attorney that the other jurors yelled at him for the comments that he made during the polling of the jury. Further, and most important, juror No. 5 ... said that juror No. 6 ... stated that she was not going to award any money to some rich attorney. See affidavit attached.
“5. As a result of the above misconduct and overt act of juror No. 6 ... the juror and/or jury was prejudiced against the Plaintiffs.... Such prejudicial conduct af *1347 fected the jury in reaching its own verdict.” [e.s.]
The rest of the motion relates to background and the relief requested.
The trial judge granted the motion. His order cites the three supreme court decisions discussed later in this opinion but does not state the rationale for allowing the jury interviews. Pending the interviews, the court reserved any ruling on plaintiffs’ post trial motion for judgment in accordance with prior motion for directed verdict, motion for new trial, and motion for mistrial. Defendant has filed a petition for a writ of common law certiorari, which we treat as an appeal from the order. Ray Cooke Enterprises Inc. v. Parsons, 627 So.2d 1267 (Fla. 4th DCA 1993). We reverse.
Nearly four decades ago, the supreme court of our state held in McAllister Hotel v. Porte, 123 So.2d 339 (Fla.1959), that:
“[T]he law does not permit a juror to avoid his verdict for any reason which essentially inheres in the verdict itself, as that he ‘did not assent to the verdict; that he misunderstood the instructions of the Court, the statements of witnesses or pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matters resting alone in the juror’s breast.’ ”
123 So.2d at 344. Five years ago, in State v. Hamilton, 574 So.2d 124 (Fla.1991), the court said:
“Florida’s Evidence Code, like that of many other jurisdictions, absolutely forbids any judicial inquiry into emotions, mental processes, or mistaken beliefs of jurors, [f.o.] § 90.607(2)(b), Fla. Stat. (1987) (Law Revision Council Note— 1976).[1] Jurors may not even testify that they misunderstood the applicable law. Id.; Songer v. State, 463 So.2d 229, 231 (Fla.), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). This rule rests on a fundamental policy that litigation will be extended needlessly if the motives of jurors are subject to challenge. Branch v. State, 212 So.2d 29, 32 (Fla. 2d DCA 1968). The rule also rests on a policy ‘of preventing litigants or the public from invading the privacy of the jury room.’
“However, jurors are allowed to testify about ‘overt acts which might have prejudi-cially affected the jury in reaching their own verdict, [c.o.]’ ”
574 So.2d at 128.
Barely three months later, the court decided Baptist Hosp. of Miami Inc. v. Maler, 579 So.2d 97 (Fla.1991), in which the court explained these decisions:
“The distinction drawn by the cases quoted above is between overt prejudicial acts, and subjective impressions or opinions of jurors. To the extent an inquiry will elicit information about overt prejudicial acts, it is permissible; to the extent an inquiry will elicit information about subjective impressions and opinions of jurors, it may not be allowed.”
579 So.2d at 99. Continuing, Maler said:
“We now clarify the meaning of Hamilton in light of the strong public policy against allowing litigants either to harass jurors or to upset a verdict by attempting to ascertain some improper motive underlying it. We hold that an inquiry is never permissible unless the moving party has made factual allegations that, if true, would require a trial court to order a new trial using the standard adopted in Hamilton." [e.s.]
579 So.2d at 100.
In Maler, the.affidavits of defense counsel recounted their conversation with two jurors. The gist of the reported remarks was that some of the panel had felt so sympathetic for the injured child that they awarded money thinking that an insurance company would pay it; that one of the two did not think that plaintiff had proved his case; that some jurors wanted to award $5-6 million, but the one juror thought that amount outrageous; that they had to award some money because someone had to take care of the child; and *1348 that one expert witness was “a joke”, while another was “impressive.” The defense motion to interview jurors alleged that these juror comments indicated an agreement to return a verdict out of sympathy. The Moler court rejected this contention, saying:
“The affidavits, quoted in pertinent part above, do not support these conclusory statements. The factual matters in the affidavits allege nothing more than the purported opinions of two jurors about the reason the verdict was reached, not statements by jurors that any type of agreement was reached to disregard their oaths and ignore the law. Both sympathy for a child and the reasons why jurors reached a particular verdict clearly are subjective impressions or opinions that are not subject to judicial inquiry.”
579 So.2d at 99-100.
Just last year, the supreme court returned to these decisions in a case involving a contention that statements concerning racial bias made during jury deliberations should authorize a judicial inquiry into the conduct of the jury. Powell v. Allstate Ins. Co., 652 So.2d 354 (Fla.1995). There the court was asked to decide whether these statements of racial prejudice inhere in the verdict or instead constitute overt prejudicial acts to permit an inquiry. The court said:
“[W]e find the alleged racial statements made by some of the jurors to constitute sufficient ‘overt acts’ to permit trial court inquiry and action. Under Maler and Hamilton, it would be improper, after a verdict is rendered, to individually inquire into the thought processes of a juror to seek to discover some bias in the juror’s mind, like the racial bias involved here, as a possible motivation for that particular juror to act as she did. Those innermost thoughts, good and bad, truly inhere in the verdict.
“But when appeals to racial bias are made openly among the jurors, they constitute overt acts of misconduct. This is one way that we attempt to draw a bright line. This line may not keep improper bias from being a silent factor with a particular juror, but, hopefully, it will act as a check on such bias and prevent the bias from being expressed so as to overtly influence others.”
652 So.2d at 357-8.
Plaintiffs argument in this court is that the “rich lawyer” comment should be equated with the numerous and pervasive racial comments and jokes in Powell. Indeed, plaintiff forthrightly argues that “[a]p-peals to any [e.s.] bias, whether racial, ethnic or otherwise, clearly result in an unfair jury and constitute misconduct on the part of the juror.” But Powell does not authorize courts to open up juror inquiries to post-verdict derogatory statements about the legal profession. Powell carefully limited its holding to overt acts of racial prejudice during jury deliberations.[2] We do not believe that it can fairly be read as a wholesale retreat from the traditional rule that post verdict interviews of jurors will be limited to overt acts of misconduct during jury consideration of the case.
The precise holding in Powell is that open appeals of racial prejudice to other jurors during (or before) deliberations constitute overt acts of misconduct supporting an inquiry. The verbal misconduct must be fairly deemed an attempt by one juror to inject racial prejudice into the decision-making process. In this case, we understand counsel’s account of what the juror told him to refer to comments made after the jury had already been discharged. Moreover, it did not describe an attempt by one juror to inject racial prejudice into the deliberations, but rather an explanation by the one juror after the verdict about her innermost thoughts and her motivation to act as she did. The comments she made constitute nothing more than subjective impressions and opinions as to why she reached her particular verdict. Hence both the substance and timing of the remark clearly relate solely to matters inher- *1349 mg in the verdict and are immune to judicial inquiry. Moler, 579 So.2d at 99.
There is not a word in the motion and affidavit in this ease even hinting at an agreement among jurors — much less an illegal one to disregard their oath. The very worst idea that emerges from the papers is that after the case was over, and the jurors were gathering them personal effects to depart the courthouse, one juror told another that her decision was motivated by an antipathy against awarding money to “rich” lawyers, and that other jurors were upset with one juror for what he said when they were polled in open court. Moler held, and Powell did not change the holding, that an inquiry is never permissible unless the moving party has made factual allegations that, if true, require a trial court to order a new trial. We do not think the allegations come anywhere close to requiring a new trial.
We are unable to distinguish this case from Moler in any meaningful way. To borrow from the last paragraph of Moler quoted above, the allegations in the affidavit do not support the conclusory statements of an illegal agreement. The facts allege nothing more than the purported opinions of one juror as to why that juror voted as she did— not statements by jurors that any type of agreement was reached to disregard their oaths and ignore the law. There simply was no statement by the juror that any type of agreement was reached for the jurors to disregard their oaths and ignore the law.
The post-verdict revelation of a bias against lawyers clearly is a subjective impression or opinion that is not subject to judicial inquiry. Moreover, although we suppose it is possible to envision foul language and tone of voice so egregious that it could plausibly coerce someone into agreeing to a verdict deemed unacceptable, that is hardly what has been alleged here. For it cannot have escaped the reader’s attention that the affidavit contains no statement by the juror to the effect that he was emotionally bludgeoned into agreeing to the verdict by intimidation, language or the voice level of any other juror.
Focusing only on the contention of verbal intimidation through yelling and foul language and ignoring any suggestion of racial or similar bias, we emphasize that here the contention was raised for the first time only after the jury had been polled and discharged. We do not believe that Moler suggests a categorical rule allowing jurors so easily to recant their record admissions during polling. To do so is to denigrate the very act of polling a jury, i.e. to have them state in open court whether they actually agree with the verdict. The polling of a jury is a significant event. If assent to a verdict in the privacy of the deliberation room has been procured by acts of foul language or verbal aggression, the sanctuary for the juror is the courtroom — the one place where the juror can reveal such improper conduct with impunity and protection.
REVERSED.
DELL and PARIENTE, JJ., concur.

. § 90.607(2)(b), Fla. Stat. (1995) ("Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.”).

. We do not mean to suggest that the rationale of Powell will always be limited to racial prejudice. Just as the cases on impermissible use of peremptory strikes have extended beyond racial prejudice to other forms of ethnic and sexual bias, so undoubtedly in the expanse of time will the rule in Powell.