SHARP, W., J.
Comer seeks certiorari review of a post-verdict order in a civil case which granted respondents’ (Hudson and the Housing Authority of the City of Sanford) motion to interview jurors. See generally Fla. R. Civ. P. 1.431(h). We have jurisdiction. See Orange County v. Piper, 585 So.2d 1182 (Fla. 5th DCA 1991).
This suit began as a public housing eviction complaint filed by respondents, to which petitioner filed several counterclaims. The Housing Authority sought to evict Comer because she allegedly had illegal drugs in her apartment. The petition was amended to add an allegation that she committed an assault on her boyfriend. The jury returned a verdict in favor of the Housing Authority on the eviction issue. However, it determined the Housing Authority and its director (Hudson) violated Comer’s constitutional rights and returned a $77,000.00 verdict in her favor.
One of the jurors disclosed to an attorney for the Housing Authority the following facts and based on that disclosure, the Housing Authority filed the following motion to interview:
(1) The foreman, Ronald Baritz, in the middle of trial, violated the Court’s order not to discuss this case with other jurors. He prejudiced the jury pool by directly and expressly stating what he thought should be the ultimate verdict and result of the case. Baritz stated, “Guys, this is clearly a case of an illegal search. This one will be easy to decide.” The jury had not yet received any instructions from the Court regarding a *516 determination of whether the search was legal or illegal.
(2) The jurors awarded punitive damages in violation of the Court’s instructions only to award compensatory damages.
(3) The jurors were confused and did not understand that the SHA is not the City of Sanford. The jurors attempted to “punish” the relatively deep-pocketed City of Sanford for the allegedly illegal search. Baritz announced during deliberations, “We need to punish the City of Sanford. We need to send a message.”
(4) The jurors were confused and did not understand that, if Comer was properly evicted for stabbing her boyfriend, and the stabbing occurred before she abandoned her apartment, she did not have compensatory damages.
(5) The foreman, Baritz, coerced jurors into awarding Comer a substantial judgment of $77,000. Other jurors balked at giving Comer such a judgnent and wanted to award money only to Comer’s children. Baritz announced that he did not work and had nothing else to do. Baritz declared he would force the deliberations to last three months if necessary to reach an agreement to award Comer $77,000. Juror Richard Dreg-gors had pressing business matters, to which he needed to return.
(6) The verdict was influenced by consideration of matters outside the record. The SHA and Hudson were made to pay for the repressive actions of Eastern European Communist governments. Two jurors, Baritz and David Hovanec, announced to the jury during deliberation that their families were from Eastern Europe. They explained that their families immigrated to the United States to escape repressive governments. They further declared that the actions of the SHA constituted repressive government action.
The trial court granted the Housing Authority’s motion to conduct a post-trial interview as to the above matters.
The Florida Supreme Court in Devoney v. State, 717 So.2d 501 (Fla.1998) recognized the long-established guidelines with regard to jury interviews. A jury interview may be sought for the purpose of avoiding a verdict, to show any matter which occurred during the trial or jury deliberations, which does not essentially inhere in the verdict itself. However, a jury interview should not be pursued as to matters which inhere in the verdict such as a juror who did not assent to the verdict, a juror that misunderstood the instructions of the court or statements of the witnesses or pleadings, or a juror that was unduly influenced by the statements of other jurors or mistaken in his calculations or judgment.
In the motion to interview the jurors quoted above, it appears to us that only the first allegation might support a juror interview. The other allegations pertain to matters which inhere in the verdict. In some circumstances, jurors make inappropriate comments during deliberations or at trial sufficient to allow a court to find these statements indicate the lack of a fair trial.[1] The comments here do not rise to that level.
The comment made by foreman Baritz during a recess was clearly an improper, premature statement about the evidence. This court in Brooks v. Herndon Ambulance Service, 510 So.2d 1220 (Fla. 5th DCA 1987), indicated such would not merit *517 a new trial, unless it was based on an external source — some outside information not presented as evidence at trial, or if it gave the impression to other jurors the comment was based on outside information. As such, the juror interviews should be limited and focused on those grounds only.
Accordingly, we grant Comer certiorari relief by limiting the scope of the juror interviews to the first ground alleged in the motion to interview.
Petition for Writ of Certiorari GRANTED; Juror Interviews Limited to Scope Granted in Order, Except as Stated in This Opinion.
THOMPSON, C.J., and COBB, J., concur.

. For example, statements by jurors which evince racism are considered an improper influence and may be the subject of a post-trial jury interview. See Powell v. Allstate Insurance Co., 652 So.2d 354 (Fla.1995).